

**IT IS ORDERED as set forth below:**

Date: June 29, 2023

_____
**Wendy L. Hagenau
U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| IN RE: | CASE NO. 11-62288-WLH |
|---|---|
| KEVIN LOGAN MALIN, | CHAPTER 7 |
| Debtor. | |

**ORDER DENYING MOTION TO REOPEN CHAPTER 7 CASE**

**THIS MATTER** is before the Court on Debtor's Motion to Reopen Chapter 7 Case (Doc. No. 37) (the "Motion").

**Facts and Procedural History**

Debtor filed for Chapter 7 bankruptcy relief on April 25, 2011. At the time of filing, Debtor did not list any claim for injury on his bankruptcy schedules or related documents. The Chapter 7 Trustee, Robert B. Silliman, filed a report of no distribution. Debtor's case was discharged and subsequently closed on December 16, 2011.

In 2018, Debtor retained counsel regarding a potential claim against the Bridgeport (CT) Catholic Diocese (the "Diocese"). The U.S. Trustee was informed of the potential claim and filed

1

a Motion to Reopen Chapter 7 Case (Doc. No. 15), on November 16, 2019 to reopen Debtor's bankruptcy case to appoint a trustee to investigate and administer the personal injury claim. The bankruptcy case was reopened on November 16, 2018 (Doc. No. 16). Edwin K. Palmer was appointed as successor trustee.

On January 24, 2019, Debtor filed amended Schedules B and C and an amended summary of assets and liabilities (Doc. No. 33). On Schedule B, on line 21, Debtor listed a "Potential personal injury claim against the Bridgeport Diocese (debtor reserves the right to exempt at a later date, subject to trustee's right to object)" in the amount of $1,000.

The Chapter 7 Trustee filed a report of assets and request to set claim deadline (Doc. No. 24). The Chapter 7 Trustee also retained special counsel, Thomas M. McNamara (Doc. No. 27, granted at Doc. No. 32), to represent the estate in relation to the personal injury claim. Mr. McNamara was the lawyer the Debtor had already retained in connection with the claim. No creditors filed proofs of claim. On May 2, 2019, the Chapter 7 Trustee filed a Report of No Distribution, reflecting he abandoned the claim against the Diocese, and the bankruptcy case was closed on July 5, 2019.

On April 19, 2023, the Debtor filed the Motion, seeking to reopen his Chapter 7 bankruptcy case to "correct the information regarding a potential asset from the time of the filing of the original case." More specifically, Debtor seeks to disclose a lawsuit he filed against Mr. Mathews in the Connecticut Superior Court, alleging Mr. Mathews worked for the Diocese and was the priest responsible for the personal injury Debtor claims he suffered. Mr. Mathews filed a Response (Doc. No. 38) in opposition.

The Court held a hearing on the Motion on May 18, 2023, during which counsel for Debtor (Kelly Thomas) and counsel for Mr. Mathews (Hayden Kepner) appeared by video. After hearing

argument from counsel, the Court invited additional briefing on reopening the case. Debtor thereafter filed a Brief in Support of the Motion to Reopen Chapter 7 Case (Doc. No. 43), and Mr. Mathews filed a supplemental response to the Motion (Doc. No. 45). [1]

Debtor argues 1) Mr. Mathews is not a "party in interest" and lacks standing to object to reopening the case; 2) Debtor's 2019 amendment listing a potential personal injury claim against the Diocese included the claim against Mr. Mathews; and 3) the Court should reopen the case to allow Debtor to amend his schedules to list the claim against Mr. Mathews since Debtor and creditors both stand to benefit from the reopening. In response, Mr. Mathews states he has standing to object to the motion to reopen; he was not an employee of the Diocese at the time of the alleged abuse; and reopening is not warranted since there will be no benefit to creditors.

**Standing**

Standing to oppose a motion to reopen is a threshold issue. Standing is defined as "[a] party's right to make a legal claim or seek judicial enforcement of a duty or right." Black's Law Dictionary (9th ed. 2009). Bankruptcy Rule 5010 allows a case to be reopened "on motion of the debtor or a party in interest pursuant to §350 (b) . . . ." Fed. R. Bankr. P. 5010. Standing to oppose a motion to reopen is not expressly addressed in the Bankruptcy Code or Rules. Courts considering the issue focus on whether the objecting party is a "party in interest." See In re Tarrer, 273 B.R. 724, 730-31 (Bankr. N.D. Ga. 2001). "Party in interest" is not defined in the Bankruptcy Code but is generally defined as someone "who [has] a stake in the outcome of the bankruptcy case." In re Rodrigues, 370 B.R. 467, 475 (Bankr. D. Mass. 2007).

---

[1] On June 7, 2023, Mr. Mathews filed a Motion to Intervene with respect to the Motion to Reopen Chapter 7 Case pursuant to Federal Rule of Bankruptcy Procedure 2018(a). Debtor filed a response in opposition to the Motion (Doc. No. 47). The Court granted the motion to intervene on June 29, 2023.

Whether a party is a party in interest is determined on a case-by-case basis. Peachtree Lane Assocs., Ltd. v. Grandader (In re Peachtree Lane Assocs., Ltd.), 188 B.R. 815, 824 (N.D.Ill.1995). The term is construed broadly to allow affected parties to appear and be heard, but it is not infinitely elastic. In re Pub. Serv. Co. of New Hampshire, 88 B.R. 546, 550 (Bankr. D. N.H. 1988). To qualify as a party in interest requires more than merely being interested in the outcome of the bankruptcy. It requires a direct legal interest in the case or matter. In re Morris Publ'g Group LLC, 2010 WL 599393, at *3 (Bankr. S.D. Ga. Feb. 10, 2010); In re Rimstat, Ltd., 193 B.R. 499, 503 (Bankr. N.D. Ind .1996). The term party-in-interest " 'is generally understood to include all persons whose pecuniary interests are directly affected by the bankruptcy proceedings.'" Nintendo Co., Ltd. v. Patten (In re Alpex Computer Corp.), 71 F.3d 353, 356 (10th Cir.1995).

The "party in interest" analysis also is subject to the dictates of standing conferred by Article III of the Constitution. In re Phillips, 2012 WL 1232008 *2 (Bankr. D. N.J. April 12, 2012); Tarrer, 273 B.R. at 730–31. Under the broader doctrine of constitutional standing, "a party wishing to participate in a bankruptcy proceeding must: 1) have suffered an actual injury or show the imminence of such injury; 2) establish that the injury is fairly traceable to the conduct at issue; and 3) demonstrate that the requested relief is likely to redress the injury." Id. at 731.

Courts have disagreed about whether defendants in non-bankruptcy court actions have standing to oppose the reopening of a bankruptcy case. Some have found particular state court defendants do have standing to oppose reopening. See e.g., In re Lewis, 273 B.R. 739, 743 (Bankr. N.D. Ga. 2001) (state court defendants may oppose motion to reopen because of impact reopening would have on both forums); Tarrer, 273 B.R. at 731 (a state court defendant's "interest in avoiding a long and potentially expensive litigation on the merits" and "potential loss of judicial estoppel defense" were sufficiently concrete interests to support a finding they are parties in interest for the

4

purpose of objecting to debtors' motion to reopen). Other courts, however, have found state court defendants lack standing to oppose reopening. In re Boyd, 618 B.R. 133, 159 (Bankr. D.S.C. 2020); see e.g., In re Sweeney, 275 B.R. 730, 733 (Bankr. W.D. Pa. 2002) (defendants did not have standing in bankruptcy simply because they have standing in state court action); In re Odin Demolition & Asset Recovery, LLC, 544 B.R. 615, 626 (Bankr. S.D. Tex. 2016) (defendants in state court lawsuit were not "parties-in-interest" under Rule 5010).

Mr. Mathews is the defendant in pending state court litigation. The resolution of the Motion will likely affect the continuation of the pending action against Mr. Mathews in the Connecticut courts. The determination of whether to reopen the bankruptcy case will thus impact Mr. Mathews. This case is particularly suited to allowing Mr. Mathews to participate since there are no creditors who stand to benefit from reopening the case. The Court has determined Mr. Mathews has sufficient interest to be heard on the Motion and has granted his request to intervene. Accordingly, the Court will consider his arguments in relation to the sufficiency of disclosure and the merits of reopening Debtor's bankruptcy case.

**Sufficiency of disclosure**

Debtor and Mr. Mathews dispute whether Debtor's 2019 amendment to Schedule B reflecting a potential personal injury claim against the Diocese encompasses Debtor's claim against Mr. Mathews. Debtor contends his disclosure of his potential claim against the Diocese necessarily covered any claims he may have had against Mr. Mathews as the actor involved. Mr. Mathews contends the disclosure did not encompass any claim against Mr. Mathews as evident by Debtor settling the claim against the Diocese separately from his claim against Mr. Mathews. For purposes of the bankruptcy court, the Court holds the disclosure of the claim against the Diocese includes any claim against Mr. Mathews. In this disclosure analysis, it is important to focus on the

5

purpose of disclosure in bankruptcy court, which is to give the Trustee and interested parties enough information to decide whether to inquire further about the matter.

Section 704(a)(4) of Title 11 of the United States Code requires the trustee, inter alia, to "investigate the financial affairs of the debtor." 11 U.S.C. § 704(a)(4). The trustee's ability to perform his duties and others set forth in section 704 depends substantially on the accuracy and completeness of the debtor's disclosures. In re Colvin, 288 B.R. 477, 481 (Bankr. E.D. Mich. 2003). These disclosures "are at the very core of the bankruptcy process and meeting these obligations is part of the price debtors pay for receiving a bankruptcy discharge." Id.

A debtor has a duty to disclose all assets to the bankruptcy court on a schedule, including potential legal claims. 11 U.S.C. § 521(a)(1); Graupner v. Town of Brookfield, 450 F.Supp.2d 119, 124 (D. Mass. 2006). The Bankruptcy Code, though, offers no guidance as to the specificity with which those assets must be described. Once an asset is referenced on a schedule, section 521(a)(1) does not specify the level of detail with which that asset must be described. See In re Furlong, 437 B.R. 712, 718 (Bankr. D. Mass. 2010), aff'd, 450 B.R. 263 (D. Mass. 2011), aff'd, 660 F.3d 81 (1st Cir. 2011) (quoting Kuehn v. Cadle Co., 2007 WL 809656, at *4 (M.D. Fla. March 15, 2007)) ("The statute does not provide any guidance as to the level of specificity required" when listing assets on a bankruptcy schedule.); see also In re Mohring, 142 B.R. 389, 395 (Bankr. E.D. Cal. 1992) ("There are . . . no bright-line rules for how much itemization and specificity is required" on a bankruptcy schedule.), aff'd, 153 B.R. 601 (9th Cir. BAP 1993), aff'd, 24 F.3d 247 (9th Cir.1994).

While a "debtor has a duty to prepare schedules carefully, completely, and accurately," generally, an asset is adequately scheduled if its description exhibits "reasonable particularization under the circumstances." In re Mohring, 142 B.R. at 394–95; see also Payne v. Wood, 775 F.2d

202, 205 (7th Cir. 1985). As investigation is part of the trustee's duties under section 704, <u>Bonner v. Sicherman (In re Bonner)</u>, 330 B.R. 880 (6th Cir. 2005), a debtor is required only to "do enough itemizing to enable the trustee to determine whether to investigate further," <u>Furlong</u>, 660 F.3d at 87; <u>see also</u> <u>Payne</u>, 775 F.2d at 206 ("The debtor must furnish enough information to put the trustee on notice of the wisdom of further inquiry. The trustee. . . then may make a calculation of the benefits of more detailed listing in each case"); 4 Collier on Bankruptcy ¶ 521.06[1] ("The purpose of the schedules is to give interested parties sufficient information to decide whether they want to engage in further inquiry.").

Further, the Bankruptcy Code does not require every component of a cause of action to be spelled out on a debtor's schedule. <u>See</u> <u>Bonner</u>, 330 B.R. 880, at *4 (where debtors scheduled "Auto Accident Claim," it was common knowledge that a personal injury suit could arise out of the same underlying facts, and the trustee was on notice to investigate, satisfying the requirements of section 521); <u>cf.</u> <u>Tilley v. Anixter, Inc.</u>, 332 B.R. 501, 510–11 (D.Conn.2005) (reasoning that the scheduling of one claim does not amount to the proper scheduling of another if the first claim does not put the trustee on inquiry notice to investigate the second). Courts applying this standard have found that a debtor's schedules need not identify every potential cause of action, every possible defendant, or even any defendant at all, so long as a partially scheduled claim contains enough information that a reasonable investigation by the trustee would reveal the claim ultimately asserted. <u>Nicholas v. Green Tree Servicing, LLC</u>, 173 F. Supp. 3d 250, 255–56 (D. Md. 2016).

Courts have found scheduled claims encompass related claims arising from the same underlying facts. For example, in <u>Furlong</u>, 660 F.3d 81, the court stated it was common knowledge that business tort claims and claims under Massachusetts law might arise out of the same underlying facts as a claim for breach of contract. Therefore, the court found the trustee was on

7

inquiry notice to investigate the extent of the asset and of the claims before making the decision to abandon the claims from the estate. The court concluded all of the claims were properly scheduled under section 521(a)(1). See also Bejarano v. Bravo! Facility Servs., Inc., 251 F. Supp. 3d 27, 34 (D.D.C. 2017) (concluding the debtor sufficiently disclosed her FMLA claims when she listed her "Pending Employment Discrimination Claim" on her Amended Schedule B, such that her FMLA claims (and her other employment discrimination claims) were abandoned and reverted to the debtor so that she had standing to assert her FMLA and her other employment discrimination claims); c.f., Taylor v. Fin. Recovery Servs., Inc., 252 F. Supp. 3d 344, 350 (S.D.N.Y. 2017), aff'd, 886 F.3d 212 (2d Cir. 2018) (because the debtor adequately disclosed her FDCPA claim, it was abandoned by the estate and reverted back to her at the close of her bankruptcy case and neither judicial estoppel nor the standing doctrine precluded her from her FDCPA claim since it was sufficiently disclosed in bankruptcy proceeding).

Courts have also held a debtor need not identify every possible defendant. For example, in Lee v. Forster & Garbus LLP, 926 F.Supp.2d 482 (E.D.N.Y.2013), a debtor scheduled an FDCPA claim against a debt collector, NCOP XI LLC, but did not list its representative, Forster & Garbus LLP, as a defendant in that action. Id. at 485, 489–90. The court ruled that the debtor nevertheless had standing to pursue the suit against Forster because the trustee had abandoned the claim, and a minimal investigation by the trustee would have revealed Forster's involvement in the alleged FDCPA violation. Id. at 490. The court explained in more detail:

> The court agrees that it is sensible to require debtors to provide enough information for the trustee to be able to determine whether it is in the best interests of the estate to pursue the claim. If the trustee cannot evaluate the claim, then the estate's creditors may be deprived of a valuable asset. On the other hand, if the trustee has enough information to decide that the claim is not worth pursuing and no claim is brought, the creditors and the courts can be assured that the trustee made a purposeful decision to abandon the claim. In this instance, based on the parties' representations, it appears that the Schedule provided sufficient information about

8

> Plaintiff's potential FDCPA claims for the trustee to have been able to make an educated decision not to bring the claims against both Defendants. Even though the Schedule did not list Forster as a possible defendant in any FDCPA action, a minimal investigation by the trustee would have revealed that Forster was a potential defendant in any such an action.

Id. at 489–90.

Similarly, in Kuehn v. Cadle Co., 2007 WL 809656 (M.D. Fla. Mar. 15, 2007), the plaintiff's Chapter 7 bankruptcy petition scheduled a pending lawsuit against Cadleway Properties, even though the defendant in the suit was Daniel C. Cadle, the owner of Cadleway Properties. Id. at *1–2. The court held that the claim against Cadle was abandoned upon the closing of the bankruptcy case because the schedule gave the trustee sufficient notice of the lawsuit to allow it to investigate further and discover the true defendant. Id. at *5; see also Bonner v. Sicherman (In re Bonner), 330 B.R. 880 (6th Cir. 2005) (holding that schedules that listed an "Auto Accident Claim" without identifying a potential defendant was sufficiently specific to alert the trustee to a potential personal injury claim arising from an automobile collision).

On the other hand, courts have concluded that disclosures of legal claims do not encompass unrelated causes of action because the trustee would have no reason to investigate unrelated claims. For instance, in Hermann v. Hartford Cas. Ins. Co., 675 F. App'x 856, 860 (10th Cir. 2017), the Tenth Circuit concluded that the debtor's disclosure of a "Potential Personal Injury Award" on his bankruptcy schedule did not encompass a claim against the defendant insurance company "for unreasonable denial of and delay in processing his claim for worker's compensation benefits," because "a bad-faith insurance claim is not similarly related to a 'Potential Personal Injury Award[.]'" Id. at 861. Likewise, the court concluded in Dixon v. Flowers Baking Co. of Jamestown, LLC, 2015 WL 1567537 (M.D.N.C. Apr. 8, 2015), that the debtor's disclosure of his worker's compensation claim did not encompass his ADA claims because "a claim for worker[']s

9

compensation is not normally associated with a claim under the ADA, and thus would not give a trustee notice to investigate[.]" Id. at *7. Ultimately, the focus in each case is on whether the trustee knew of the asset and had the opportunity to investigate it prior to closing the case. In re Fuller, 624 B.R. 852, 859 (Bankr. S.D. Ind. 2020).

Here, the Debtor scheduled a potential claim against the Diocese, but he did not list its representatives or any priest of the Diocese. Mr. Mathews was not named specifically as a defendant. Debtor's disclosure unquestionably put the Chapter 7 Trustee on inquiry notice to investigate his potential claims against the Diocese. The Diocese can only act through people, so a reasonable investigation of the claim would have included identifying the alleged actors, including Mr. Mathews. It thus appears that Debtor's amended Schedules provided sufficient information about his potential personal injury claims for the Chapter 7 Trustee to make an educated decision about whether to bring claims against both the Diocese and Mr. Mathews. Even though Schedule B did not list Mr. Mathews as a possible defendant in any personal injury action, a minimal investigation by the Trustee would have revealed that Mr. Mathews was a potential defendant in any such an action. Accordingly, the Court concludes Debtor's earlier disclosure did encompass his claim against Mr. Mathews. The claim was abandoned by the Trustee and revested in the Debtor. See 11 U.S.C. § 554(c) ("Unless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor"); Cole v. Fifth Third Bank, Inc. (In re Cole), 521 B.R. 410, 414 (Bankr. N.D. Ga. 2014).

**Reopening**

Finally, the Court must determine whether to reopen Debtor's bankruptcy case. Debtor contends reopening is warranted to permit him an opportunity to further amend his Schedules. Mr.

Mathews argues reopening is not necessary since it would prejudice him and not provide any benefit to any creditors.

Section 350(b) of the Bankruptcy Code permits a bankruptcy case to be reopened "to administer assets, to accord relief to the debtor, or for other cause." See generally Fed. R. Bankr.P. 5010 ("[a] case may be reopened on motion of the debtor or other party in interest pursuant to section 350(b) of the Code."). Reopening a case usually occurs to "take care of some detail that was overlooked or left unfinished at the time the case was closed." In re Grp. Mgmt. Corp., 2022 WL 14929963, at *14 (Bankr. N.D. Ga. Oct. 24, 2022) (cites omitted).

By its reference to "cause," section 350(b) casts a broad net, and a decision in this respect thus necessarily falls within the "sound discretion of a bankruptcy court." Tarrer, 273 B.R. at 731–32; In re Lewis, 273 B.R. 739, 743 (Bankr. N.D. Ga. 2001). "The bankruptcy court should exercise its discretion, based upon the peculiar facts present and determine if cause exists and how ultimately to dispose of the case." In re Koch, 229 B.R. 78, 88 (Bankr. E.D.N.Y. 1999). In considering the question of whether to reopen a closed bankruptcy case, courts generally consider the following three interests: 1) the benefit to the debtor; 2) the prejudice or detriment to the defendant in the pending litigation; and 3) the benefit to the debtor's creditors. Tarrer, 273 B.R. at 732 (cites omitted).

Courts regularly decline to reopen cases where there is no merit to the ultimate relief being requested because reopening the case would be "meaningless." Grp. Mgmt. Corp., 2022 WL 14929963, at *18 (citing State Bank of India v. Chalasani (In re Chalasani), 92 F.3d 1300, 1307 (2d Cir. 1996); In re Atari, Inc., 2016 WL 1618346, at *11 (Bankr. S.D.N.Y. Apr. 20, 2016); In re Hashiman, 2020 WL 5914605 (B.A.P. 9th Cir. Oct. 5, 2020)). Here, reopening Debtor's bankruptcy case is not necessary. The asset to be administered has already been disclosed,

11

investigated, and abandoned. The Debtor needs no further relief. The Court finds reopening would be meaningless and declines to exercise its discretion to reopen the case.

Accordingly,

**IT IS ORDERED** that the **MOTION** is **DENIED**.

**END OF DOCUMENT**

**Distribution List**

Gus H. Small
Benjamin S. Klehr
Small Herrin, LLP
100 Galleria Parkway
Suite 350
Atlanta, Georgia 30339

J. Hayden Kepner, Jr.
J. Robert Williamson
Scroggins & Williamson, PC
4401 Northside Parkway
Suite 450
Atlanta, GA 30327

Susan H. Senay
Kelly Thomas
Matthew T. Berry & Associates
Suite 600
2751 Buford Highway NE
Atlanta, GA 30324